IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

Ruben Porter, SBI# 321379, Plaintiff

vs.

Civil Action Number:      0 6 - · 3 8 8

Thomas Carroll D.C.C. Warden,
Elizabeth Burris D.C.C Deputy Warden,
Joseph Ballinger D.C.C. Captain,
Carlton Adams D.C.C, Correctional Officer of Lunch time shift,
John/Jane Doe D.C.C. Correctional Officers of Lunch time shift,
John/Jane Doe D.C.C. Correctional Officers of Isolation SHU,
Evelyn Stevenson Institution Base Classification Committee (IBCC)
John/Jane Doe of IBCC,
John/Jane Doe of IBCC.,
Jim Simms Counselor, and Multi Disciplinary Team member (MDT),
John/Jane Doe of MDT Board,
John/Jane Doe of MDT Board,
Cassandra Arnold MHU Counselor
And Department of Corrections (Delaware Correctional Center (DCC)),
Defendants.

FILED

JUN 15 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

"Civil Complaint"

Jurisdiction: "This Court has jurisdiction under 42 U.S.C.A § 1983 and 5, USCA § 552 a".

"P A R T I E S"

1. Ruben Porter plaintiff inmate at Delaware Correctional Center Smyrna.
2. Thomas Carroll, Defendant, is the Warden of the D.C.C Smyrna and is

1

responsible for the promulgation of rules, Policies, regulations, and practices at the Delaware Correctional Center Smyrna. He is sued in his individual capacities.

3. Elizabeth Burris, Defendant is Deputy Warden of DCC Smyrna, She is being sued in her individual capacities

4. Joseph Ballinger, Defendant is a Captain (Shift Supervisor) at D.C.C. Smyrna, He is sued in his individual capacities.

5. Carlton Adams, Defendant, is a D.C.C. Correctional Officer at Smyrna. He is sued in his individual capacities (lunch time shift)

6. John/Jane Doe Defendants D.C.C Correctional Officers of Smyrna Lunch time shift are being sued in their individual capacities.

7. John/Jane Doe Defendants DCC Correctional officers of Isolation SHU at Smyrna are being sued in their individual capacities

8. Evelyn Stevenson Defendant is chair Person of I.B.C.C. at D.C.C. Smyrna. She is being sued in her individual capacities.

9. John/Jane Doe Defendants of IBCC are sued in their in--dividual Capacities.

10. John/Jane Doe Defendants of IBCC are sued in their in--dividual Capacities.

11. Jim Simms Defendant is a D.C.C. Counselor and MDT member He is being sued in his individual Capacities

12. John/Jane Doe Defendants of MDT Board are being sued in their individual Capacities (Multi Disciplinary Team).

2

13. John/Jane Doe, Defendant of D.C.C. Smyrna M.D.T Board are being sued in their individual capacities.

14. Cassandra Arnold Defendant was Plaintiff D.C.C. Smyrna Counselor. She is being sued in her individual capacities.

15. Department of Corrections D.C.C. Defendant is an agency within the meaning of the privacy Act, 5 U.S.C.A. § 552 a and it is being sued Pursuant to 5 U.S.C.A. § 552(a),(g),(i),(C) and (D).

## " STATEMENT OF FACTS "

On 5/31/04, Plaintiff witnessed Correctional Officer C/o Carlton Adams confront inmate (I/M) Vincent Quattlebaum about not having his shirt tucked in. After not being satisfied with the promptness of I/M Quattlebaum following his directive, C/o Adams ran from behind I/M Quattlebaum and jumped directly in front of him, cutting him off from walking forward, and causing them to bump into each other. C/o Adams then asked I/M Quattlebaum why he didn't tuck in his shirt. While I/M Quattlebaum tried to explain that he was tucking in his shirt from the front, C/o Adams grabed I/M Quattlebaum by the left side of his shirt, making I/M Quattlebaum loose balance. Approximately fifthteen inmates and plaintiff asked C/o Adams why he was'nt following Procedure, and that he was'nt supposed to be touching in-mates. C/o Adams then let I/M Quattlebaum go and called for back up on his radio. As soon as another C/o (John/Jane Doe)

3

came C/o Adams grabed I/M Quattlebaum again, the other C/o
(John/Jane Doe) ran to assist C/o Adams, another C/o (John/JaneDoe)
then arrived and cuffed I/M Quattlebaum while two other officers
(John/Jane Doe) held him. Then a lot of other C/o's (Correctional
Officers John/Jane Doe's) came on the scene. The inmates who wit-
nessed this and plaintiff tried to explain to every C/o (John/
Jane Doe's) that came on the scene of the incident that
C/o Carlton Adams failed to follow code of conduct or Proper Pro-
-cedures and that I/M Quattlebaum did not break any rules.

(a) First C/o Adams did not give I/M Quattlebaum enough time
to complete his directive to tuck in his shirt.

(b) Then C/o Adams ran from behind I/M Quattlebaum and
cut him off by jumping in front of him causing initial contact.

(C) Assuming C/o Adams was attempting to take inmate
Quattlebaum's D.C.C., I.D. Card (Card is clip on inmate's left
pocket of shirt) when C/o Adams grabed the left side of in-
-mate Quattlebaum's clothing; the proper procedure for obtain-
-ing a inmates I.D. card; (C/o's take identification cards when
they intend to write a inmate up) is: to ask for inmates I.D.
card in a respectful tone. If inmate refuses to give C/o his I.D.
card, C/o is then supposed to call for assistance from other C/o's.
After C/o's arrive to give assistance, C/o that called is to ask in-
-mate to turn around and put his hands behind his back to be-

cuffed. If inmate refuses to comply, then, and only then can C/o's take physical action in the form of restraining and cuffing a inmate.

12. Considering the above information, it's clear that C/o Adams neglected to perform the standard procedure practiced by all C/o's that work at D.C.C. The inmates who witnessed C/o Adams violation of these rules tried to bring it to the attention of the C/o's (John/Jane Doe) who arrived on the scene of the incident.

After being ignored we asked to see a Luietenant correctional Officer, however, Sargent C/o Sullivan arrived first and urged us to proceed to the chowhall for lunch, promising to look into our allegations. After this all inmates proceeded to chowhall and ate lunch.

13. After eating and being locked in the chowhall for approximately "25 minutes", all inmates of building # 23 unit "A" (plaintiff housing area at the time, also called MHU) were escorted by several C/o's (John/Jane Doe's) in groups of two back to their housing unit." Thirteen inmates — were pointed out by C/o Adams and ordered to be hand cuffed and put in separate rooms throughout MHU (MHU consist of Bldg's 21, 22, 23, 24) by defendant Captain Joseph Ballinger who was the shift supervisor on day of incident.

5

14. Shortly after, the "13" inmates were taken to the visiting rooms located in the Security Housing Unit (SHU), and placed in sep-arate visiting cubicles. After being there for approximately "3" hours in cuffs tight with bleeding wrists. Seven inmates were taken back to the MHU. The remaining Six inmates (plaintiff, Vincent Quattlebaum, Jamah K. Grosvenor, Marcus Brock, Courtney Barnes, and Damone Flowers) were transfered to Isolation Confinement Pre-Hearing Detention in bldg #18 which is part of the SHU: (SHU consists of bldg's 17,18,19,20) in retaliation of plaintiff and other inmates Speaking out against C/o Adams for failing to follow DCC rules, and regulations, and proper procedure.

Plaintiff had this right under "Inmate Housing Rules" for bldg's. 22 and 23 at "DCC Smyrna" which states "inmates may express their views in a non-disruptive manner" Further-more, under the First Amendment of the US Constitution, U.S. Citizens have the right to practice "Freedom of Speach".

Plaintiff do not loose this right because he is a inmate at D.C.C.. Plaintiff was, and is currently being punished for practicing his guaranteed U.S. Constitutional right.

15. On 5/31/04 defendants Capt. Ballinger and Warden Carroll ordered plaintiff's transfer to Isolation confine-ment pre hearing detention (Iso) without giving him a

6

notice of any charges being brought up against him in the form of a write up or disciplinary report. D.C.C's corrections Code of penal Discipline requires that inmates who are trans- -fered to Isolation, must be given notice of transfer. Defendants Captain Ballinger and Warden Carroll and C/o Adams and John/ Jane Doe Correctional officers failed to do this.

16. Plaintiff remained in Isolation for eleven days, two thirds Of the maximum days inmates can stay in Isolation, (which is 15 days maximum). Throughout those 11 days, Plaintiff was never notified of any charges being brought against him, nor was he given a chance to make a statement or have a hear- -ing of any Kind. "Until" hearing plaintiff is entitled to remain in his existing status (MHU), unless he becomes a sufficient threat to other inmates, staff members, or himself to warrant pre-hearing detention". This in turn means that Plaintiff had a right to due process in determination that he engaged in such conduct, Plaintiff was deprived of that right.

17. Whatever charges, reasons or disciplinary report which caused Plaintiff's transfer to Isolation. Was reviewed by de- fendant "Warden" Thomas Carroll every day Plaintiff remained in Isolation, which means despite his and defendant Captain Joseph Ballinger obvious error by placing Plaintiff in Isolation, defendant Warden, Thomas Carroll ordered that Plaintiff remain there daily for 11 days. Furthermore, even if Plaintiff was served with a write up, Defendant Carroll was supposed to have Plaintiff transfer

7

-ed back to the MHU after he did not receive a preliminary disciplinary hearing within 72 hours. However, Plaintiff was not ever served with a write up, which made his time served in Isolation, illegitimate.

18. As a result of plaintiffs arbitrary and capricious place--ment in Isolation, by defendants Ballinger and Carroll, he lost opportunities to be classified in a more productive housing area of D.C.C where plaintiff could enter into rehabilitative Programs and work and further his education. Consider--ing Plaintiff was in the MHU awaiting to be classified to D.C.C. compound general population the placement in Isolation with out a write up caused Plaintiff to also miss good time credits towards his sentence would of taken points off of plaintiff record. In essence plaintiff placed in Isolation with out a write up deprived him of being housed in his correct housing area due to defendants Ballinger and and Carroll violating D.C.C's corrections code of penal dis--cipline.

19. On 5/31/04 plaintiff was placed in Isolation with out a write up in retaliation for plaintiff witnessing the abuse of inmate Vincent Quattlebaum at the hands of C/o Adams and other C/o's John/Jane Doe who all agressively hand cuffed "Quattlebaum" after C/o Adams assault and battery upon Quattlebaum only because his shirt was not

8

not tucked in and when C/o Adams gave the order for inmate Quattlebaum to tuck his shirt in Quattlebaum begin tucking his shirt in from the front but not fast enough for C/o Adams who quickly lost his temper and agressively assaulted and battered inmate Quattlebaum with back up assistance from John Jane Doe Correctional Officers who all were the ones whom handcuffed Plaintiff's and took all plaintiffs to Isolation on 5/31/04 plaintiff was kept in Isolation for 11 days and kept in the SHU until 9/18/05

Due to falsified or invalid Disciplinary reports and transfer order. DCC Classification Committee consists of the MDT and the IBCC. The MDT is made up of Defendants Jim Simms Counselor, JohnJane Doe MDT members. The IBCC is made up of defendants Evelyn Stevenson IBCC chair Person and John Jane Doe IBCC members. Plaintiff transfer and unknown Classification was/is in Violation of Plaintiff Due process rights and first amendment right and eighth amendment right against cruel and unusual punishment.

20. Retalitory fabrication of prison records is a Privacy Act Violation, and retalitory reclassification and transfer is a deprivation of plaintiff's first  amendment rights and adverse determination

9

under the privacy act,

21. The transfer to Isolation SHU on 5/31/04 for
11 days with no write ups plaintiff was handcuffed
and shackled for 3 Hours in the SHU visiting--
cubicles with out seeing a D.C.C nurse or Doctor
and with D.C.C nurse or Doctor authorization.
Handcuffed by C/o Adams and taken to the
SHU Isolation by John/Jane Doe Correctional
Officers from Isolation who do not wear
their C/o picture I.D., and name tags to
purposely avoid grievances and lawsuites
after they do wrong doings to inmates

John Jane Doe C/o's escorted plaintiff to
Isolation in shackles and hand cuffs placed
plaintiff in Bldg#18 Isolation cell Lower
3 tier ___ which cell was dirty with no bed
frame and one dirty uncovered urine smelling
mattress plaintiff asked Isolation C/o for a
bed frame and asked for a clean covered vinyl
mattress, pillow, pillow case, sheets, blankets, mop

soapy water filled bucket, broom, dust pan, soap towel, wash cloths, tooth paste and tooth brush.

Clo's in Isolation said no to plaintiff requests. plaintiff asked Clo's in Isolation to please get his personal property soap, toothpaste, tooth brush, Wash cloths, towels and shower shoes, comb hair brush, deodorant, body oil, lotion body powder. Isolation Clos said no nothing is allowed in Isolation cells. Plaintiff asked for a grievance, a ink pen and for a sick call slip because the dirty filthy cell caused plaintiff to cough and become sick the Clo's in Isolation said no ink pen, no grievances, no sick call slips, allowed in Isolation cell. plaintiff asked Clo in Isolation for a phone call Clo said no phone calls, Plaintiff asked Clos in Isolation for soap toothpaste, tooth brush, paper, pen, envelopes, pay to so Plaintiff could clean his self before he became sicker and he could clean the cell and his self as a human.

11

plaintiff was not given those items from the State provisions or from his property or allowed to purchase soap, tooth paste, tooth brush, comb, hair brush, under clothes, shower shoes, inkpen, paper, envelopes, stamps for mailing letter or socks. From D.C.C commissary. Plaintiff for eleven days could not write his family, his friends or write a Lawyer or clean his self or clean the cell.

Because C/o's in Isolation denied him all the above and refused to give plaintiff a roll of toilet paper. Plaintiff lived for "11" days under unsanitary stressful oppressive control under C/o's in Isolation plaintiff could not wash his hands before meals or after meals plaintiff could not brush his teeth and could not wash his hands after passing urine or after passing stools for no soap, toothpaste, tooth brush, or toilet paper are allowed in Isolation cell orders of Isolation Correctional

12

officers who also denied plaintiff a right
to live under sanitary clean conditions -
also denied plaintiff a right to write letters
or to mail out letters to courts, attorney,
or family or friends and denied plaintiff
a right to have personal or legal mail or
legal work in his Isolation cell and also
denied plaintiff a right to read religious
materials Bible or Quran saying to plain-
-tiff no nothing is allowed in Isolation
Cells. Shower days were with out wash
Cloths and towels no shower shoes no
soap only dirty sheets and dirty pillow
cases were left on shower cell bars by
C/o's who run Isolation they never wear
they photo Id. or name tags so they can
avoid grievances and lawsuites. Plain
- tiff had no blankets no sheets no toilet paper

13

no soap nothing in his Isolation cell but a dirty mattress no bed frame for 11 Days beginning on 5/31/04 to 6/10/04 and kept in SHU housing until 9/18/05.

22. Plaintiff could not file grievances or sign up for sick call or write courts, attorney family or friends due to correctional officers John/Jane Doe denying plaintiff housed in Isolation Bink pen, paper, grievance or sick call slip, plaintiff denied a right to seek medical care. As well as denied a right to file grievances, and denied a right to write his family, friends attorney or courts or religious advisor. One of the plaintiff a Jamah K. Grosvenor got in touch with Jim Simms of MDT a defendant who never responded back and plaintiff Grosvenor grievance to Defendant Deputy Warden Elizabeth Burris. Instead of defendant Burris handling the situation and consulting with Warden Carroll another defendant, defendant Burris sent a

14

a copy of plaintiff Jamah K. Grosvenor grievance to Treatment Administrator Ronald Hosterman who is inferior to Deputy Warden Burris position. She and Mr. Hosterman did nothing to resolve the situation of all plaintiff being transfered to the Isolation cells of the SHU without a write up on 5/31/04.

23. Inmates who have 5 years or more are supposed to be classified once a year. Plaintiff has over 5yrs. left on his sentence. His counselor Cassandra Arnold did not inform plaintiff of when he would be classified. She knew plaintiff was housed in Isolation without a write up. She did nothing to resolve getting plaintiff Classified to his correct housing area.

The C/o's of Isolation deprived plaintiff of cleaning items for the cell and his body. Also deprived plaintiff of his right to have sheets bedding blankets change of clothes towels under clothes legal mail personal mail ink pen paper stamps access to phone and news media were denied plaintiff as well as deprivation of sick call and grievances And toilet paper and no religious materials allowed in Isolation.

15

"All defendants were acting under the color of State law, during all times relevant to this complaint".

I Ruben Porter, swear or affirm that the above stated information is true and correct by the best of my knowledge and is made under penalty of perjury.

\*_____

Affiant Signature

Sworn to and subscribed before me on this _____ day of _____ 2006

_____

Notary public

CLAIMS

FIRST CAUSE OF ACTION

24. The actions or inactions of the defendants stated in paragraphs #1 of pg. #4, violated plaintiff first amendment rights when:

(a) defendants retaliated against the Plaintiff as set forth in the statement of facts and following pages: #3, #4, #5, #6 and #7.

25. The actions or inactions of the defendants stated on pages: #6, #7, #8, #9, #10, #11, #12, #13, #14, and #15, violated plaintiff rights against Cruel and unusual punishment under the Eighth Amendment of USCA..

26 The actions or inactions of the defendants stated on pages: #3, #4, #5, #6, #7, #8, #9, #10, #11, #12, #13, #14, #15, violates Plaintiff's Fourteenth Amendment right when

(a) Defendants violated plaintiff procedural and substantive due process rights as set forth on pages: paragraph 18 page #8, and pgs. 3 thru 15.

(b) Defendants deprived Plaintiff of his right of liberty to be housed in clean sanitary living conditions in D.C.C, by denying plaintiff of hygiene items to clean hisself and denied plaintiff of cleaning items to clean Isolation cell plaintiff was housed in without a write up.

17

(c) Defendants deprived Plaintiff of his liberty to have access to hygiene items from his personal property or from DCC commissary purchase or from State weekly issue

(d) Defendants deprived plaintiff of his rights to write letters by denying Plaintiff ink pen paper mailing stamps and envelopes either from out of his personal property or from purchasing mailing supplies from D.C.C, Commissary Defendants denied plaintiff his mailing priveleges to receive or to mail out mail claiming nothing allowed in Isolation cells, no pens no Grievance slips or Sick call slips see pages : paragraph 14 of pg.#6 pg.#7 paragraph #16, pg#8, pg#9. Especially — Pages #10, 11, 12, 13, 14 and 15."

(e) Defendants denied plaintiff a right to have a ink pen paper or Sick call Slip to sign up to see a Prison nurse or a Doctor, Denied Medical treatment, Pg.11.

(f) Defendants denied Plaintiff his rights to read religious materials   See pages : #13.

18

(g) Defendants deprived Plaintiff of a right to have a bed frame and to have a clean vinyl covered mattress. Plaintiff was placed in a dirty cold filthy cell. With a urine smelling floor and urine smelling foam mattress on the floor.

(h) Defendants deprived plaintiff of clean sheets, blankets, pillow, pillow case, change of prison clothing pants, shirts, socks under shirt, under wear, hat and coat wash cloths, towels, soap, tooth paste, tooth brush, comb, and toilet paper, to be given to him from his property or to be provided by D.C.C staff or to allow plaintiff to purchase some of the items from D.C.C. commissary all was deprived plaintiff.

(i) Defendants denied Plaintiff of his personal mail, his legal mail, his religious material, and his legal work, and his access to be allowed to write requests to the prison law library was denied and deprived by the C/o's who work in Isolation who told plaintiff for eleven days nothing is allowed in Isolation cells: No bed frame, no sheets, no pillow, no pillow case, no blanket no change of clothing pants, shirts, No change of under clothes, no soap no tooth paste, No tooth brush, no comb, nothing, etc.

19

27. The actions or inactions of the defendants stated in paragraphs: #15 of pg #3 and paragraph #20 of pages #9 and 10. violated the privacy Act, 5 U.S.C.A. 552 a (g)(1)(C) and (D). When, (A) Defendants transfered plaintiff to the SHU Isolation/Pre Hearing confinement on 5/31/04 for eleven days without a writeup and was kept in the SHU from 5/31/04 to 9/18/05 based on false and fabricated prison records as stated on pages: #5 paragraph #13, Pg #6 paragraph #14 and #15, pg. 7 paragraph #16 #17, & #18, #19 #20 #21, and pages #10 #11 #12 #13 #14 & #15. "

## "R E L I E F"

A. Grant compensatory damages in the amount of $8,000.00 against all defendants mentioned in this civil Complaint.

B. Grant punitive damages in the amount of $8,000.00 against all defendant mentioned in this complaint.

C. Grant $150.00 a day against D.C.C. for keep-ing Plaintiff in the SHU Isolation for eleven days with out a write up in Pre Hearing detention and kept plaintiff housed in the SHU from the date of 5/31/04 until 9/18/05. And grant plaintiff any other relief that he may be entitled to.

20

D. Grant compensatory damages in the amount of $8,000.00 against defendants Carroll, Ballinger, Simms John/Jane Doe, Stevenson, John Jane Doe, Hosterman, - Arnold C/o Adams and C/o's of lunchtime Shift John/Jane Doe and all SHU C/o's whom along with C/o's of lunch time Shift tight hand cuffed plaintiff breaking plaintiff skin around both plaintiff wrists with out authorization of DCC Doctor or a nurse and left plaintiff Cuffed tight with bleeding cut up wrists for three hours in the SHU visiting room holding cubicles. And deprived plaintiff of medical treatment for his cut up wrists from C/o's tightly handcuffing Plaintiff for three hours.

E. Grant punitive damages in the amount of $8,000.00 against defendants listed above for allowing plaintiff to be tightly handcuffed until he bleed from his wrist in pain for 3 hour with out authorization of DCC Doctor or Nurse and was deprived of Medical treatment by the defendants.

21

H. For the Court to order a investigation Of the D.C.C, SHU Isolation Unit to see to it that no other inmates are housed in Isolation with out a bedframe clean mattress change of outer and under Clothes and without hygiene items and toilet paper and with out mailing supplies and with out access to his personal mail and legal mail and with out access to the D.C.C. Law Library and was deprived medical-treatment and for eleven days was deprived of all those things and was deprived of clean sheets, pillow, pillow case and blankets and was not allowed to have change of clothes or mailing supplies or legal mail or shower shoes or hygiene From his personal property and was not allowed to purchase them from D.C.C commissary nor would DCC Staff allow plaintiff any thing in the Isolation cell plaintiff was housed in for eleven days with out a write up in pre-hearing detention.

I. Grant plaintiff any other relief that plaintiff is entitled to.

22

All violations of plaintiff rights against cruel and unusual punishment and violations of plaintiffs due process rights are demonstrated in this civil complaint of which plain-
-tiff seeks relief from all defendants for violating his rights guaranteed under the U.S. Constitution.

Respectfully Submitted,

* Ruben Porter

Ruben Porter SBI#321379
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware, 19977

17 AUG

Appendix E

## DELAWARE CORRECTIONAL CENTER ---- MEMORANDUM

TO:       Inmate Ruben Porter , SBI# 321579 , Housing Unit 22
VIA:      Counselor      Armid
FROM:     I.B.C.C.
DATE:     _____ 2/20/04
RE:       Classification Results

Your M.D.T. has recommended you for the following: _____

_____

_____

The I.B.C.C.'s decision is to:

___ Approve _____

___ Not Approve _____

___ Defer _____

___ Recommend _____

___ Not Recommend _____

### BECAUSE:

| | |
|---|---|
| ___ Lack of program participation | ___ Time remaining on sentence |
| ___ Pending disciplinary action | ___ Prior failure under supervision |
| ___ Gradual phasing indicated | ___ Poor institutional adjustment |
| ___ Open charges | ___ Serious nature of offense |
| ___ Prior criminal history | |

___ Failure to follow your treatment plan in that you _____

_____

___ You present a current and continuous danger to the safety of staff, other inmates, or the good
order of the Institution. Explanation: _____

_____

**OTHER:** _____

_____

### ADDITIONAL COMMENTS:

___ Develop/continue treatment plan with counselor

You will be expected to address the following: _____

_____

_____

Copy to: Classification
         Inmate                                    Form #456 (3 Part NCR)
         Institution File                          Revised 11/97



I/M Kudzen Porter

SBI# 321379    UNIT 22 A4-10

DELAWARE CORRECTIONAL CENTER

1181 PADDOCK ROAD

SMYRNA, DELAWARE 19977

U.S.M.S
X-RAY

United States District Court

844 N. King st., Lock Box 18

Wilmington, DE 19801 - 3570